UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
……………………………………………………..…………x
JAMES CANNER, KARL HAYES, JAMES
MCCORMACK, JOSE MIGUEZ, JOHN RADIN, and
BENJAMIN TAYNE

                              Plaintiffs,                       **MEMORANDUM AND ORDER**
                                                   12-cv-2611 (DRH)(GRB)

          -against-

THE CITY OF LONG BEACH, CITY OF LONG
BEACH POLICE DEPARTMENT, MICHAEL
TANGNEY, FRAN ADELSON, LEN TORRES,
MICHAEL FAGEN, SCOTT J. MANDEL, JOHN C.
MCLAUGHLIN, JACK SCHNIRMAN, PATROLMEN
BENEVOLENT ASSOCIATION OF THE CITY OF
LONG BEACH, INC., and STEFAN CHERNASKI,

                            Defendants.
……………………………………………………….…x

**APPEARANCES:**

**Rothstein Law PLLC**
Attorneys for the plaintiffs
11 Park Place
Suite 1801
New York, NY 10007
By:    Eric Edward Rothstein, Esq.

**Forchelli, Curto, Deegan, Schwartz, Mineo & Terrana, LLP**
Attorneys for the defendants City of Long Beach,
City of Long Beach Police Department,
Michael Tangney, Fran Adelson, Len Torres, Michael Fagan,
Scott J. Mandel, John C. McLaughlin, Jack Schnirman
333 Earle Ovington Blvd.
Suite 1010
Uniondale, New York 11553
By:    Jeffrey G. Stark, Esq.
        Donald Jay Schwartz, Esq.
        Danielle B. Gatto, Esq.

**Winget, Spadafora & Schwartzberg, LLP**
Attorneys for the defendants Patrolmen Benevolent Association
of the City of Long Beach, Inc. and Stefan Chernaski
45 Broadway
19th Floor
New York, New York 10006
By:    Dianna D. McCarthy, Esq.
        Robyn Leigh Silvermintz, Esq.

**HURLEY, Senior District Judge:**

Plaintiffs James Canner, Karl Hayes, James McCormack, Jose Miguez, John Radin, and Benjamin Tayne, (collectively "plaintiffs") commenced this action pursuant to 42 U.S.C. § 1983 alleging that defendants violated their rights under the First and Fourteenth Amendments of the United States Constitution by retaliating against them based on their political affiliation.

Presently before the Court is a motion made by the City of Long Beach, City of Long Beach Police Department, Michael Tangney, Fran Adelson, Len Torres, Michael Fagen, Scott J. Mandel, John C. McLaughlin, and Jack Schnirman (collectively "city defendants") seeking the dismissal of Counts I through IX of the Complaint, alleging *inter alia* First Amendment violations.  Additionally, defendants Patrolmen Benevolent Association ("PBA") and Stefan Chernaski (collectively "PBA defendants") seek dismissal of Count X of the Complaint alleging a breach of the duty of fair representation under state law.  For the reasons set forth below, the city defendants' motion is granted in part and denied in part, and the PBA defendants' motion is denied.

## *BACKGROUND*

The following facts are taken from the Complaint and are presumed true for purposes of this motion.

### A.    The Parties

Each plaintiff was employed in various law enforcement capacities by defendants the City of Long Beach ("City") and the City of Long Beach Police Department ("LBPD") for an extensive period of time.[2]  (Compl. ¶¶ 62, 125, 212, 253, 299, 364.)  Most plaintiffs had exemplary work records and had been distinguished by various awards, commendations, and medals.  (*Id.* ¶¶ 68, 126, 219, 225, 369.)  Additionally, most plaintiffs had extensive and specialized training in several fields of police work.  (*Id.* ¶¶ 69, 127, 256, 304, 370-71.) McCormack did much work to benefit the LBPD, implemented several new programs, raised revenue, and substantially increased grant money raised by the LBPD.  (*Id.* ¶¶220-24.)  Each plaintiff received at least one promotion during his tenure with the LBPD, and several plaintiffs had been promoted as many as three times.  (*Id.* ¶¶ 64, 66, 129-131, 216-17, 262, 301, 303, 306, 366-68.)  Each plaintiff vocally and publically supported the Republican Party.  (*Id.* ¶¶ 71, 135, 228, 266, 311-12, 375-76.)

Defendant Jack Schnirman ("Schnirman") was the City Manager during the relevant time period and was responsible for administering the daily operations of the City's government, including the operation of the LBPD.  (*Id.* ¶ 26.)

At all relevant times, the Long Beach City Council ("Council") was the governing body of the City and had the authority to hire and fire the City Manager.  (*Id.* ¶ 18.)  In addition, plaintiffs allege that the members of the City Council, defendants Fran Adelson, Len Torres, Michael Fagen, and Scott J. Mandel, were policymakers responsible for the operation of the LBPD.  (*Id.* ¶¶ 18-23.)

---

[2] Each plaintiff was originally employed with the LBPD as either a detective or police officer. However, all plaintiffs received at least one promotion during their tenure, and thus acted in higher ranked capacities as well.

Defendant Michael Tangney ("Tangney") served as the Acting Police Commissioner, and then the Police Commissioner of the LBPD during the relevant time period, and plaintiffs assert that he was also a policymaker responsible for the operation of the LBPD. (*Id.* ¶ 41).

Defendant PBA is the exclusive bargaining unit for the members of the LBPD and is charged with enforcing the Collective Bargaining Agreement. Defendant Stefan Chernaski was the President of the PBA at all times relevant to this complaint.

### B. Political Affiliation

Each plaintiff was openly affiliated with the Republican Party. Tangney, on the other hand, openly supported the Democratic Party. (*Id.* ¶¶ 51, 100.) On several occasions, Tangney made comments to plaintiffs about their political affiliation. For example, in January 2011, Tangney allegedly told Canner that when "the Democrats take over, it's going to be a blood bath . . . ." (*Id.* ¶ 80.) In November 2011, Tangney's wife ran as a Democratic candidate for the City Council election. (*Id.* ¶ 81.) After she was defeated, Tangney allegedly told members of the LBPD that "payback time is coming," and that he intended to "screw with [several plaintiffs] when the Democrats took control in January [2012]." (*Id.* ¶¶ 403-04.)

### C. Employment Actions Against Plaintiffs

On January 6, 2012, Tangney was appointed Acting Police Commissioner. (*Id.* ¶ 2.) Tangney, along with other individual defendants, began to demote, re-assign, change shifts, and file departmental charges and specifications against the plaintiffs. Plaintiffs allege Tangney took actions against them in response to plaintiffs' support of the Republican and Long Beach Coalition during the 2011 election campaign. According to plaintiff, since Tangney became Acting Police Commissioner, only known supporters of the Republican Party within the LBPD were demoted, re-assigned, had their shifts changed, and/or been the subject of Departmental

charges." (*Id.* ¶ 3.) Additionally, since that same time, only known supporters of the Democratic Party were promoted or assigned to more desirable shifts. (*Id.*) Each plaintiff's experience is discussed in more detail below.

### 1. *Canner*

On January 10, 2012, Tangney told Canner he had to "qualify at the pistol range with his service gun" and threatened to move Canner to the midnight shift. (*Id.* ¶ 92.) Canner's doctor, however, had previously told him not to fire weapons because his ligaments were still healing from previous surgeries, which were needed because of an injury suffered during the course of employment. (*Id.* ¶¶ 92, 480.) On February 7, 2012, Tangney told Canner that there was "a problem with [Canner's] light duty status," and that he needed "a full duty Detective Lieutenant" and was going to replace him with Chernaski. (*Id.* ¶ 94.) Tangney also threatened that if Canner did not cooperate, he would move him into another office in another detail. *Id.*

On February 14, 2012, Tangney ordered Canner to turn in his guns because he had not qualified at the pistol range. (*Id.* ¶ 95.) Within a month, Tangney ordered Canner to turn in his Department issued vehicle. (*Id.* ¶ 98.) Canner notified Chernaski that the removal of his guns put his family in danger as he had been the subject of serious death threats throughout the years, but Chernaski did not respond or assist Canner in any way.

On May 16, 2012, Canner was reassigned from the day shift to the night shift and assigned to do work traditionally performed by a Sergeant (*id.* ¶ 117), despite his status as Detective Lieutenant and Commanding Officer of the LBPD. (*Id.* ¶ 67.)

### 2. *Hayes*

On January 7, 2012, Tangney demoted Hayes from Supervisor of Investigators, a position he held for more than two years, to Sergeant.  (*Id.* ¶ 133.)  This demotion occurred less than 24 hours after Tangney was appointed Acting Police Commissioner.  (*Id.* ¶ 134.)

### 3.  *McCormack*

On January 9, 2012, Tangney reassigned McCormack from his command of the Traffic Division, took away his status as "Commanding Officer," and placed him on the night shift.  (*Id.* ¶ 236.)  McCormack was replaced in the Traffic Division by Tangney's ally, a Democratic Party supporter.  (*Id.* ¶ 238.)  McCormack requested that the PBA file a grievance on his behalf, but Chernaski responded that they should wait and see.  (*Id*. ¶ 240.)  During this period, McCormack's "chronic hypertension became exasperated due to his stressful working situation," and on February 2, 2012, McCormack retired from the police department in order to maintain his health.  (*Id.* ¶¶ 245-46.)

### 4.  *Miguez*

On January 9, 2012, Tangney commented to Miguez that he had never known Miguez to be a political guy (*Id.* ¶ 270), referring to Miguez's endorsement of the Republican Coalition. (*Id.* ¶ 268.)  That same day, Tangney demoted Miguez from detective to police officer.  (*Id.* ¶¶ 263, 271.)

### 5.  *Radin*

On January 6, 2012, Tangney demoted Radin from Inspector to Lieutenant and removed him from his Executive Officer position.  (*Id.* ¶¶ 323-24.)  That day Tangney also reassigned Radin's Departmental Vehicle to a different Sergeant, and removed Radin from his private office to a shared cubicle.  (*Id.* ¶¶ 325-26.)  Within the first four months of Tangney's administration, he ordered three reports and initiated four investigations against Radin, allegedly without merit.

(*Id.* ¶ 352.)  When Radin inquired about his demotion to Schnirman, who as City Manager must approve all promotions and demotions, Schnirman stated, "I have no interest in or intention of interfering in the operation or promotion decisions of the department."  (*Id. ¶* 330.)

### 6.    *Tayne*

Tayne had a good working and personal relationship with Tangney until Tayne began vocally and publically displaying opposition to the Democratic administration.  (*Id.* ¶ 377.) Tangney regularly made remarks to Tayne that he was "damaging [his own] career by sitting across the table from the City administration."  (*Id.* ¶ 379.)  On September 16, 2003, while Tangney was the Executive Officer, Tayne "was passed over" for a promotion to Lieutenant, which was given to an openly Democratic supporter.  (*Id.* ¶ 382.)

On January 10, 2012, Tangney and the LBPD demoted Tayne from Deputy Inspector to Lieutenant.  (*Id.* ¶ 408.)  On January 12, Tangney and the LBPD replaced Tayne with defendant Chernaski, who became Commanding Officer of Training.  (*Id.* ¶ 412.)  On January 19, Tayne was served with departmental charges.  (*Id.* ¶ 413.)  Before these events occurred, Tayne had never been subjected to disciplinary action.  (*Id.* ¶ 373.)

On January 24, 2012, Tayne along with other plaintiffs sent a letter to Tangney requesting that Tangney provide them a clear and concise chain of command and organizational structure of the policed department ("the Jan. 24, 2012 letter").  (*Id*. ¶ 88.)  Tangney did not respond.  (*Id*.)  Tangney sent a copy of the letter to Schnirman who also did not respond.  (*Id*. ¶ 90.)

### D.    Claims Alleged in the Complaint

The plaintiffs allege the following claims:

### 1.  *First Cause of Action: Declaratory Judgment*

Based on the alleged conduct, plaintiffs seek a declaratory judgment that defendants violated plaintiffs' rights of free speech and free association guaranteed by the First Amendment of the United States Constitution.  (*Id.* ¶¶ 431-32.)

### 2.    *Second Cause of Action: First Amendment Speech*

Plaintiffs allege that defendants have violated plaintiffs' right to freedom of speech under the First Amendment of the United States Constitution.  (*Id.* ¶ 434.)

### 3.    *Third Cause of Action: First Amendment Retaliation*

Plaintiffs allege that defendants retaliated against plaintiffs because they exercised their rights under the First Amendment of the United States Constitution.  (*Id.* ¶ 439.)

### 4.    *Fourth Cause of Action: First Amendment Association*

Plaintiffs allege that defendants violated plaintiffs' right to freedom of association under the First Amendment of the Constitution.  (*Id.* ¶ 444.)[1]

### 5.    *Fifth Cause of Action: 42 U.S.C. §§ 1985, 1986*

Plaintiffs allege that defendants violated plaintiffs' civil rights under 42 U.S.C. §§ 1985 and 1986 as each defendant agreed to, condoned, and participated in a conspiracy to violate plaintiffs' constitutional rights.  (*Id.* ¶¶ 449-50.)

### 6.    *Sixth Cause of Action: Constructive Discharge*

Regarding plaintiff McCormack, defendants made working conditions so intolerable that McCormack was forced to involuntarily resign; thus, defendants constructively terminated McCormack from the LBPD.  (*Id.* ¶¶ 455-56.)

### 7.    *Seventh Cause of Action: Monell*

---

[1] Plaintiffs consent to the dismissal of this claim on the basis that it is duplicative of the Second Cause of Action.  (Pls.' Mem. in Opp'n at 1, n.1.)

Defendants City and LBPD acted pursuant to an official municipal policy or custom in depriving plaintiffs of their rights, privileges, and immunities secured by the Constitution, and their rights pursuant to 42 U.S.C. § 1983. (*Id.* ¶ 460.)

### 8. Eighth Cause of Action: Americans with Disabilities Act

Defendants discriminated against Canner because of his disability in violation of the Americans With Disabilities Act, 42 U.S.C. §§ 12101-12213. (*Id.* ¶ 479.)[2]

### 9. Ninth Cause of Action: Executive Law § 296 et seq.

Defendants discriminated against Canner because of his disability in violation of New York Executive Law § 296 et. seq. ("NYHRL").

### 10. Tenth Cause of Action: Duty of Fair Representation against PBA and Chernaski

Plaintiffs allege the PBA and Chernaski denied plaintiffs the opportunity to file a grievance against defendants in violation of state law.[3] (*Id.* ¶ 500.)

### 11. Eleventh Cause of Action: Attorneys' Fees

Plaintiffs allege that they are entitled to recover attorneys' fees from the defendants.

## DISCUSSION

### I. Legal Standard

Rule 8(a) provides that a pleading shall contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). In recent years, the Supreme Court has clarified the pleading standard applicable in evaluating a motion to dismiss

---

[2] Plaintiffs consent to the dismissal of this claim. (Pls.' Mem. in Opp'n at 1, n.1.)

[3] Although plaintiffs do not state in the complaint whether they are alleging a state or federal duty of fair representation claim, both parties in their submissions indicate that the claim is brought pursuant to state law.

under Rule 12(b)(6).

First, in *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007), the Court disavowed the well-known statement in *Conley v. Gibson*, 355 U.S. 41, 45–46 (1957) that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Twombly*, 550 U.S. at 561. Instead, to survive a motion to dismiss under *Twombly*, a plaintiff must allege "only enough facts to state a claim to relief that is plausible on its face." *Id.* at 570.

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact).

*Id.* at 555 (citations and internal quotation marks omitted).

More recently, in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), the Supreme Court provided further guidance, setting a two-pronged approach for courts considering a motion to dismiss. First, a court should "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id*. at 679. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* Thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678 (*citing Twombly*, 550 U.S. at 555).

Second, "[w]hen there are well-pleaded factual allegations a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id*. at 679. "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*. The Court defined plausibility as follows:

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.' "

*Id.* at 678 (quoting and citing Twombly, 550 U.S. at 556–57) (internal citations omitted).

In other words, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting FED. R. CIV. P. 8(a)(2)).

## II. *Plaintiffs' Section 1983 Claims Against the City Council Defendants and Schnirman*[4]

### A. **Personal involvement**

City defendants allege that plaintiffs have failed to adequately plead § 1983 claims against Fran Adelson, Len Torres, Michael Fagen, and Scott J. Mandel (hereinafter the "City Council defendants") and City Manager Jack Schnirman because the Complaint lacks factual allegations that these defendants were personally involved in the alleged constitutional deprivations. According to defendants, "[i]n a complaint consisting of 512 paragraphs," only "five noted paragraphs . . . refer to the City Council Defendants." (City Defs.' Mem. in Supp. at 5.) Specifically, plaintiffs allege that the City Council defendants and Schnirman "approved the Promotions and demotions set forth in [the] Complaint," (¶ 31); "violated plaintiffs' rights . . .

---

[4] Although plaintiffs do not explicitly state in the Complaint that their First Amendment claims are brought pursuant to § 1983, since "the appropriate vehicle for bringing claims for monetary damages against persons acting under color of state law for alleged constitutional violations is 42 U.S.C. § 1983," the Court will "construe [Counts Two and Three, alleging First Amendment violations,] as claims brought pursuant to 42 U.S.C. § 1983." *Mosher v. City of Rochester*, 2004 WL 2491644, at *1 (W.D.N. Y. Nov. 4, 2004). In addition, the Court will construe Counts II and III as distinct from Count VII in that Counts II and III allege First Amendment claims against the individual defendants and Count VII alleges First Amendment claims against the City of Long Beach pursuant to *Monell*.

pursuant to a municipal policy or custom" (¶ 32); "either participated directly in the constitutional violation; were informed of the violations and failed to remedy them; created, or permitted continuation of a policy or custom under which unconstitutional practices occurred; were grossly negligent in supervising subordinates who committed the wrongful acts; or failed to act on information indicating the unconstitutional acts were occurring" (¶ 33). In addition, City Council defendants consented to Schnirman's appointment of "defendant, Tangney, as Acting Police Commissioner" (¶ 60); and consented to Schnirman's appointment of "defendant Tangney, as Police Commissioner" (¶ 61).

Defendants argue that the facts set forth in paragraph 31 are "devoid of 'further factual enhancement' of any kind and consist of 'naked assertions,' without more, which does not suffice under *Iqbal* or *Twombly* . . . [as] [t]here are not factual allegations setting forth when, where or how each of these defendants approved each of the many promotions and demotions alleged in the Complaint." Plaintiffs respond that any "information about what the Council members did, is in their exclusive possession," and that the information can only be obtained through discovery. (Pls.' Mem. in Opp'n at 4.) Moreover, plaintiffs argue that the Complaint contains sufficient factual allegations, and they rely on this Court's decision in *Fishman v. County of Nassau*, 2011 WL 3919713, at *7 (E.D.N.Y. Sept. 7, 2011), holding that plaintiff pled facts sufficiently alleging that the County Executive was personally involved in alleged constitutional violations because "[t]he Complaint detail[ed] the relationship between [the County Executive] and his co-defendants" and "[made] clear that [the County Executive] 'knew that Mr. Fishman was terminated based on [his] political association and approved, agreed to, and/or directed such termination.' "

"It is well settled in this Circuit that 'personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.' " *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995) (quoting *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994). Moreover, "a defendant in a § 1983 action may not be held liable for damages for constitutional violations merely because he held a high position of authority." *Black v. Coughlin*, 76 F.3d 72, 74 (2d Cir. 1996). Here, although the plaintiffs have alleged that Schnirman and the City Council defendants approved the promotions and demotions set forth in the complaint, their allegations are nothing more than conclusory. Unlike the plaintiffs in *Fishman*, the plaintiffs have not provided any facts bearing on a relationship between the City Council defendants, Schnirman, and their co-defendant Tangney or any facts suggesting that they knew that the plaintiffs were fired for political reasons.

Moreover the allegations regarding Schnirman's lack of response to plaintiffs' complaints about Tangney's inattention to the Jan. 24, 2012 letter requesting a clear and concise chain of command and Schnirman's statement in an email to Radin that he had no intention of interfering with the operation or promotion decisions of the department do not suffice to state a plausible claim of Schnirman's personal involvement. (Compl. ¶¶ 88-90; 329-330; 346.) In order to establish the personal involvement of a supervisory defendant like Schnirman, plaintiff must plausibly allege that: (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference ... by failing to act on information

indicating that unconstitutional acts were occurring. *Colon*, 58 F.3d at 874 (citations omitted); *but cf. Sash v. United States*, 674 F. Supp. 2d 531, 543 (S.D.N.Y. 2009) (noting that the Supreme Court's decision in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), may have effectively nullified several categories of supervisor liability enunciated in *Colon* ). Here, plaintiffs' allegations against Schnirman fail to establish that he received any information regarding the alleged constitutional violations, acted grossly negligent, or created a policy or custom under which the unconstitutional practices occurred.

Furthermore, plaintiffs' failure to plead sufficient facts is not excused by the fact that no discovery has taken place as plaintiffs must still satisfy the plausibility standard set forth in *Twombly* and *Iqbal* even in the pre-discovery phase of this litigation. *See Iqbal*, 556 U.S. at 678-79 (Rule 8 "does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.") As a result, plaintiffs' § 1983 claims against the City Council defendants and Schnirman in their individual capacities are dismissed.

**B.      Plaintiffs' Section 1983 Claims Against the City Council Defendants and Schnirman in Their Official Capacities**

Defendants argue that claims against the City Council defendants in their official capacity should be dismissed because they are actually claims against the City. As defendants correctly note, "[w]here the governmental entity can itself be held liable for damages as a result of its official policy, a suit naming the legislators in their official capacity is redundant." *Rini v. Zwirn*, 886 F. Supp. 270, 281 (E.D.N.Y. 1995). Defendants argue that the claims against Schnirman in his official capacity should also be dismissed on a similar basis. Plaintiffs consent to the dismissal of the "claims against the individual defendants as duplicative of the claims against the City." (Pls.' Mem. in Opp'n at 1, n.1.) Accordingly, defendants' motion to dismiss

the claims against the City Council defendants and Schnirman in their official capacities is granted.

### III. *Claims Against LBPD*

Defendants move to dismiss all claims against the LBPD because the LBPD is an "administrative arm" of the municipality of Long Beach and does not have a legal identity separate from Long Beach. (Defs.' Mem. in Supp. at 13.) Plaintiffs consent to the dismissal of all claims against the LBPD. (Pls.' Mem. in Opp'n at 1, n.1.)

### IV. *Plaintiffs' Fifth Cause of Action Pursuant to 42 U.S.C. §§ 1985 and 1986*

42 U.S.C. § 1985(3) prohibits two or more persons from conspiring to deprive a person of "the equal protection of the laws, or of equal privileges and immunities under the laws." To succeed on a cause of action under § 1985(3), a plaintiff must allege: "(1) a conspiracy (2) for the purpose of depriving a person or class of persons of the equal protection of the laws, or the equal privileges and immunities under the laws; (3) an overt act in furtherance of the conspiracy; and (4) an injury to the plaintiff's person or property, or a deprivation of a right or privilege of a citizen of the United States." *Thomas v. Roach,* 165 F.3d 137, 146 (2d Cir. 1999); *see also Traggis v. St. Barbara's Greek Orthodox Church,* 851 F.2d 584, 586–87 (2d Cir. 1988). Further, "[t]here must be some racial or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action." *Griffin v. Breckenridge,* 403 U.S. 88, 102 (1971); *see Thomas*, 165 F.3d at 146; *Gagliardi v. Village of Pawling,* 18 F.3d 188 (2d Cir. 1994).

Defendants argue that Plaintiffs' Fifth Cause of Action is barred by the intracorporate Conspiracy Doctrine. Under the intracorporate conspiracy doctrine, officers, agents and employees of a single corporate or municipal entity, each acting within the scope of his or her employment, are legally incapable of conspiring together. *Herrmann v. Moore*, 576 F.2d 453,

459 (2d Cir. 1978) ("[T]here is no conspiracy [under § 1985] if the conspiratorial conduct challenged is essentially a single act by a single corporation acting exclusively through its own . . . officers[] and employees, each acting within the scope of his employment."); *Girard v. 94th & 5th Avenue Corp.*, 530 F.2d 66, 71 (2d Cir. 1976); *Nassau County Employee "L" v. County of Nassau*, 345 F. Supp. 2d 293, 304-05 (E.D.N.Y. 2004); *Everson v. N.Y. City Transit Auth.*, 216 F. Supp. 2d 71, 76 (E.D.N.Y. 2002) (doctrine includes allegations of conspiratorial conduct between a public entity and its employees); *Quinn v. Nassau Cnty. Police Dep't*, 53 F. Supp. 2d 347, 359 (E.D.N.Y. 1999). Plaintiffs do not contest that their § 1985 claim is barred by the intracorporate conspiracy doctrine because it names only members of the LBPD. Plaintiffs, however, argue that the Court should permit "plaintiffs to amend the cause of action to add defendants Chernaski and the PBA," to the conspiracy claim. (Pls.' Mem. in Opp'n at 12.) According to plaintiffs, although Chernaski is a member of the LBPD, "he conspired with the co-defendants in the scope of his duties as PBA President, . . . and thus adding him would not offend the Intra-corporate Doctrine." (*Id.*) Plaintiffs also seek to add a claim that the City defendants conspired to inflict an unconstitutional injury upon defendants in violation of 42 U.S.C. § 1983. (Pls. Mem. in Opp'n at 14-15.)

Plaintiffs' requested amendments, however, would be futile because plaintiffs have failed to state a claim upon which relief can be granted. The Second Circuit has enunciated the standard to be applied in analyzing a motion to dismiss a conspiracy charge as follows:

> On a motion to dismiss, courts require "enough facts to state a claim to relief that is plausible on its face." [ *Bell Atlantic Corp. v.*] *Twombly,* 550 U.S. [544,] 570, 127 S.Ct. 1955 [167 L.Ed.2d 929 (2007) ]; *see also Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 1949–50, 173 L.Ed.2d 868 (2009). "Factual allegations must be enough to raise a right to relief above the speculative level...." *Twombly,* 550 U.S. at 555, 127 S.Ct. 1955. Broad allegations of conspiracy are insufficient; the plaintiff "must

> provide some factual basis supporting a meeting of the minds, such that defendants entered into an agreement, express or tacit, to achieve the unlawful end." *Webb v. Goord,* 340 F.3d 105, 110 (2d Cir. 2003) (internal quotation marks omitted) (addressing conspiracy claims under 42 U.S.C. § 1985).

*Arar v. Ashcroft,* 585 F.3d 559, 569 (2d Cir. 2009).

The complaint in this matter fails to provide any "factual basis [supporting] a meeting of the minds." *Id.* Rather the complaint alleges in conclusory fashion, that "[e]ach of the defendants agreed to, condoned and participated in this conspiracy by taking direct action in furtherance of the conspiracy or by knowing of the conspiracy and failing to take action to prevent it, despite having the authority to do so." (Compl. ¶ 450.) As a result, plaintiffs' § 1985 claim is dismissed and an amendment adding defendant Chernaski as a participant in the conspiracy would be futile. To the extent plaintiffs wish to plead additional facts establishing a meeting of the minds they may do so in accordance with the instructions below.

42 U.S.C. § 1986 provides that any "person who, having knowledge that any of the wrongs conspired to be done, and mentioned in section 1985 of this title, are about to be committed, and having power to prevent or aid in preventing the commission of the same, neglects or refuses so to do" shall be liable to the injured party. It is well-established that a violation of §1986 is predicated on a violation of § 1985, since the former provides a remedy for the latter. *See Talley v. Brentwood Union Free Sch. Dist.,* 2009 WL 1797627, at *9 (E.D.N.Y. June 24, 2009) (citing *Brown v. City of Oneonta, N.Y.,* 221 F.3d 329, 341 (2d Cir.2000) ("[A] § 1986 claim must be predicated on a valid § 1985 claim ....")). Because the Court has dismissed the plaintiffs' § 1985 claim against the defendants, its § 1986 claim against them must fail as well. *See Posr v. Court Officer Shield No. 207,* 180 F.3d 409, 419 (2d Cir. 1999); *Sylla v. City of New York,* 2005 WL 3336460, at *7 (E.D.N.Y. Dec. 8, 2005) ("Where plaintiff fails to state a

viable § 1985 claim, he cannot state a claim under § 1986.").  Therefore Count V of the

Complaint is dismissed.

## V.       *Plaintiffs' Seventh Cause of Action Pursuant to Monell*

A municipality may not be held liable under § 1983 on a *respondeat superior* theory of

liability for its employees' alleged constitutional violations.  *See Monell v. Dep't of Soc. Servs.,*

436 U.S. 658, 691 (1978); *Zahra v. Town of Southold,* 48 F.3d 674, 685 (2d Cir. 1995).  A

municipal entity may only be liable if the alleged conduct was undertaken pursuant to "a policy

statement, ordinance, regulation, or decision officially adopted and promulgated by [its] officers"

or a "governmental 'custom' even though such a custom has not received formal approval

through [ ] official decision making channels."  *Monell,* 436 U.S. at 690–91. Therefore,

> a local government may not be sued under § 1983 for an injury
> inflicted solely by its employees or agents. Instead, it is when
> execution of a government's policy or custom, whether made by its
> lawmakers or those whose edicts or acts may fairly be said to
> represent official policy, inflicts the injury that the government as
> an entity is responsible under § 1983.

*Coon v. Town of Springfield, Vt.,* 404 F.3d 683, 686 (2d Cir. 2005) (quoting *Monell,* 436 U.S. at

694).

The existence of a municipal policy or custom may be established in any of the following

four ways.  A plaintiff may demonstrate that his or her constitutional injuries arose from:

> (1) the existence of a formal policy officially endorsed by the
> municipality; (2) actions taken or decisions made by municipal
> officials with final decision making authority, which caused the
> alleged violation of plaintiff's civil rights; (3) a practice so
> persistent and widespread that it constitutes a custom of which
> constructive knowledge can be implied on the part of the
> policymaking officials; or (4) a failure by policymakers to properly
> train or supervise their subordinates, amounting to 'deliberate
> indifference' to the rights of those who come in contact with the
> municipal employees.

*Williams v. City of Mount Vernon,* 428 F.Supp.2d 146, 159 (S.D.N.Y. 2006) (citing *Moray v. City of Yonkers,* 924 F. Supp. 8, 12 (S.D.N.Y. 1996)); *see also Bonds v. Suffolk Cnty. Sheriff's Dep't,* 2006 WL 3681206, at *2 (E.D.N.Y. Dec. 5, 2006) (same). Plaintiffs argue that the City of Long Beach is liable for the alleged constitutional violations because the injuries arose from a widespread practice of First Amendment violations, the actions of final policymakers, and the failure of official policymakers to properly train subordinates. The Court will address these arguments in turn below.

Plaintiffs contend that "the numerous acts of First Amendment violations carried out against plaintiffs as set forth [in] the Complaint are . . . sufficient to allege 'a practice so persistent and widespread that it constitutes a 'custom or usage' and implies the constructive notice knowledge of policy-making officials' to warrant denial of defendants' motion." (Pls.' Mem. in Opp'n at 26.) If a plaintiff is challenging an unofficial custom or practice, however, he or she must show that the practice was "so widespread as to have the force of law." *Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown,* 520 U.S. 397, 404 (1997). Although a plaintiff need not demonstrate that the custom "receive[d] formal approval by the appropriate decision-maker . . . plaintiff must prove ... that [it] is permanent." *Davis v. City of New York,* 228 F. Supp. 2d 327, 337 (S.D.N.Y. 2002), *aff'd* 75 F. App'x 827 (2d Cir. 2003) (internal citations omitted).

Plaintiffs' complaint does not meet this standard. As discussed above, the plaintiffs have failed to allege the personal involvement of the City Council defendants and Schnirman in the alleged First Amendment violations. The acts of the remaining City defendant, Tangney, are insufficient to establish a practice so widespread as to have the force of law, especially whereas here Tangney is not a final policymaker. "Actions by an individual with final decision-making

authority in a municipality constitute official policy for purposes of a § 1983 claim." *Anthony v. City of New York*, 339 F.3d 129, 139 (2d Cir. 2003) (citing *Pembaur v. City of Cincinnati*, 475 U.S. 469 (1986)).  Moreover, "[a]n official has final authority if his decisions, at the time they are made, for practical or legal reasons constitute the municipality's final decisions."  *Id.* (citing *Rookard v. Health & Hosps. Corp.*, 710 F.2d 41, 45 (2d Cir. 1983)).  "The determination of whether an employee is a policy-maker is a question of law, although it involves a fact-intensive inquiry."  *Almonte v. City of Long Beach*, 2009 WL 962256, at *5 (E.D.N.Y. Mar. 31 2009).

Plaintiffs argue that the Complaint plausibly alleges that Tangney was a final policymaker.  Plaintiffs point to paragraph 330 of the Complaint stating that "[a]lthough Schnirman must approve all promotions and demotions," he sent an email to Radin stating, "I have no interest in or intention of interfering in the operation or promotion decisions of the department."  According to plaintiffs, "[t]his email was a clear and concise validation that he gave Tangney complete control and total autonomy as Acting Police Commissioner to restructure the LBPD, violate the chain of command and carry out his agenda of payback for political action."  (Compl. ¶ 331.)  These allegations, however, do not suffice as "[w]hether the official in question possessed final policymaking authority is a legal question, which is to be answered on the basis of state law."  *Jeffes v. Barnes*, 208 F.3d 49, 57 (2d Cir. 2000) (internal citations omitted).  Furthermore, "[i]t does not suffice for these purposes that the official has been granted discretion in the performance of his duties."  *Id.*  As plaintiffs do not reference any state law supporting their claim that Tangney was a final policymaker, the *Monell* claim does not survive.  *See Anthony*, 339 F.3d at 129 (rejecting plaintiff's argument that police sergeant was a final policymaker because "[plaintiff] does not provide any analogue to the state-law authority

that a county sheriff possesses, and instead argues only that [sergeant] is a final decision-maker because he had discretion to determine how to handle [a] particular situation").

Finally, plaintiffs' allegations of "a failure by official policymakers to properly train or supervise subordinates to such an extent that it amounts to deliberate indifference to the rights of those with whom municipal employees will come into contact" are nothing more than conclusory.  (Pls.' Mem. in Opp'n at 30.)  To establish deliberate indifference, plaintiffs rely on Schnirman's email where he stated that he did not intend to interfere in the operations of the LBPD.  (Pls.' Mem. in Opp'n at 30.)  This fact along with Schnirman's lack of response regarding the January 24, 2012 letter, however, do not establish deliberate indifference.  "Deliberate indifference is a stringent standard of fault, and necessarily depends on a careful assessment of the facts at issue in a particular case, . . . [and] [t]he operative inquiry is whether those facts demonstrate that the policymaker's inaction was the result of conscious choice and not mere negligence."  *Cash v. County of Erie*, 654 F.3d 324, 334 (2d Cir. 2011) (internal quotation marks and citations omitted).  Here, the facts alleged in the Complaint do not suggest that Schnirman knew that any constitutional violations had occurred, let alone that he consciously chose to ignore them.  As a result, plaintiffs' *Monell* claim is dismissed.

## VI.	*State Law Claims*

### A.	The Ninth Cause of Action Alleging Discrimination Under the NYHRL

Defendants argue that Canner's claim under the NYHRL must be dismissed because "[a]s a condition precedent to commencing a tort action against New York municipalities or any of their agents, New York General Municipal Law § 50-e requires all plaintiffs to file and serve a notice of claim 'within ninety days after the claim arises' and to allege so in the complaint." (Defs.' Mem. in Supp. at 33.)  According to plaintiffs, however, "the Notice of Claim statute

applies, by its terms, only to 'personal injury, wrongful death or damage to real or personal property' claims." (Pls.' Mem. in Opp'n at 31 (citing *Mills v. Monroe County*, 89 A.D. 2d 776 (1982) *aff'd*, 59 N.Y.2d 307 (1983).)

Section 50–i of the New York State General Municipal Law states that a plaintiff may not maintain an action "for personal injury, wrongful death or damage to real or personal property" that the plaintiff alleges to have been sustained "by reason of the negligence or wrongful act" of, among other entities, a village, unless the plaintiff has timely filed a notice of such claim. N.Y. Gen. Mun. L. § 50–i(a). New York General Municipal Law § 50–e provides that, as a condition precedent to filing suit, a notice of claim must be filed against the municipal entity within ninety days after the claim accrues. N.Y. Gen. Mun. Law § 50–e(1)(a).

"As the plain language of the statute makes clear, this provision applies to tort actions, not to discrimination claims brought under Section 296 of the New York Executive Law." *Barella v. Village of Freeport*, 2014 WL 1672364, at *8 (E.D.N.Y. Apr. 26, 2014) (collecting cases). The Court is not persuaded otherwise by the cases that defendants cite. For example, in *Hines v. Vill. Of Hempstead Police Dep't*, 725 F. Supp. 2d 368 (E.D.N.Y. 2010), cited by the defendants, the court relied on cases with county defendants where the plaintiff was required to file a notice of claim in accordance with New York County Law § 52, a statute not at issue here where defendant is not a county. *See e.g.*, *Cody v. County of Nassau,* 577 F.Supp.2d 623, 648–49 (E.D.N.Y. 2008); *Alessi v. Monroe County,* 07–CV–6163 (MAT), 2010 WL 161488, at *11 (W.D.N.Y. 2010). Moreover, in *Chesney v. Valley Stream Union Free School District*, 2006 WL 2713934 (E.D.N.Y. Sept. 22, 2006), another case defendants cite, this Court analyzed whether the plaintiff was required to file a notice of claim regarding its claims against a school district pursuant to N.Y. Educ. Law § 3813, another statute not at issue here. *Chesney*, 2006 WL

2713934, at *8 (citing *Cavanaugh v. Bd. Of Educ. Of Huntington Union Free Sch. Dist.*, 296 A.D.2d 369, 369 (2d Dep't 2002). Accordingly, the Court denies defendants' motion to dismiss the NYHRL claims for plaintiffs' failure to file a notice of claim.[5]

### B. McCormack's Constructive Discharge Claim

Defendants argue that the Court should dismiss McCormack's constructive discharge claim because "constructive termination is not a recognized independent cause of action in New York . . . [r]ather, constructive discharge is the alleged adverse employment action that serves as the basis for specific statutory cause of action, such as . . . the ADA." (Defs.' Mem. in Supp. at 31.) According to defendants, since "[t]he complaint, on its face, clearly does not reference [any applicable statute] as the law pursuant to which the allegedly constructive discharge has run afoul," the claim should not survive. (*Id*. at 31.) Plaintiffs acknowledge this deficiency, but seek leave to amend to add "Executive Law § 296" as a label to the cause of action. (Pls.' Mem. in Opp'n at 30.) Plaintiffs' request to replead is granted subject to the terms below.

## VII. Plaintiffs' State Duty of Fair Representation Claim Against the PBA and Chernaski

The PBA defendants assert that plaintiffs' duty of fair representation ("DFR") claim should be dismissed for several reasons addressed in turn below.

### A. Supplemental Jurisdiction

PBA defendants argue that the Court should decline to exercise supplemental jurisdiction over the plaintiffs' state DFR claim. Pursuant to 28 U.S.C. § 1367, "in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original

---

[5] The Court will not address Defendants' argument that plaintiffs' NYHRL claim should be dismissed against the individual defendants because it rests upon the Court dismissing the NYHRL claim against the City and the LBPD.

jurisdiction that they form part of the same case or controversy . . . [including] claims that involve the joinder or intervention of additional parties." The district courts may decline to exercise supplemental jurisdiction, however, if "the claim raises a novel or complex issue of State law," "the claim substantially predominates over the claim or claims over which the district court has original jurisdiction," "the district court has dismissed all claims over which is has original jurisdiction," or there are other compelling reasons for declining jurisdiction." 28 U.S.C. § 1367(c).

Here, defendants argue that the Court should decline to exercise supplemental jurisdiction over plaintiffs' state duty of fair representation claim "due to [its] intricate nature making [it] best resolved in State Court." In both cases relied on by the defendants, however, the court determined not to exercise supplemental jurisdiction over the state law duty of fair representation claim after dismissing all of the plaintiffs' federal claims. *See El-Bey v. City of New York*, 151 F. Supp. 2d 285, 302 (S.D.N.Y. 2001); *Muhlrad v. Mitchell*, 1997 WL 182614, at *4 (S.D.N.Y. 1997). Here, however, the Court has not dismissed all of plaintiffs' federal claims. Furthermore, at this stage in the litigation, defendants have not explained why plaintiffs' claim presents intricate questions that would be best decided in the state court. As a result, the Court declines to relinquish jurisdiction over plaintiffs' state duty of fair representation claim at this time.

### B.    Defendant Chernaski

PBA defendants also move to dismiss plaintiffs' DFR claim against defendant Chernaski because "[i]t is well settled that a New York state DFR claim is only proper against the union itself." (PBA Defs.' Mem. in Supp. at 5. (citing *Duane Reade, Inc. v. Local 338 Retail, Wholesale Dep't Store Union*, 3 Misc. 3d 405, 412 (N.Y. Sup. 2003).) Plaintiffs urge the Court to disregard defendants' position because "it is based on a line of cases that trace their roots to

*Martin v. Curran*, 303 N.Y. 276 (1951), which set a standard for unincorporated associations,"
and those cases are inapplicable here because the PBA is incorporated.  (Pls.' Mem. in Opp'n at
5.)  In addition, plaintiffs respond that "New York law has long been that 'a corporate officer
who participates in the commission of a tort may be held individually liable . . . regardless of
whether the corporate veil is pierced."  (Pls.' Mem. in Opp'n at 4 (citing *Fletcher v. Dakota, Inc.*,
99 A.D.3d 43 (1st Dep't 2012).)

Defendants are right to point out, however, that in *Duane Reade*, the court relied on
*Martin* in dismissing plaintiff's claims against a non-incorporated "labor union and/or its
officials in their representative capacities."  3 Misc. 3d at 410.  In analyzing plaintiff's claims
against the representatives in their *individual* capacities, however, the court relied on *Covello v.
Depository Trust Co. Local 153*, 88 F. Supp. 2d 59 (E.D.N.Y. 2000), which held that on federal
representation claims "union officers and employees are not individually liable to third parties
for acts performed as representatives of the union."  *Id.*  Defendants maintain that the "New York
State Courts have adopted the federal law holding that a DFR claim is only proper against the
union itself and not union officers."  (Defs.' Mem. in Supp. at 3.)  However, the case law
provided is inadequate to support the proposition urged, namely that the *Covello* holding has
been adopted by New York state courts in analyzing claims against the individual representatives
of an incorporated labor union.  As a result, based on the papers presently before it, the Court
will not dismiss plaintiffs' state law duty of fair representation claim against Chernaski.

C.      **Statute of Limitations**

Defendants contend that plaintiffs' claims must be dismissed to the extent they violate the
statute of limitations.  Both parties agree that a DFR claim must be commenced within four
months of the date the employee knew or should have known that the breach occurred or within

four months of the date the employee or former employee suffers actual harm, whichever is later. Defendants claim that "any DFR claims stemming from the PBA's refusal to file grievances more than four months prior to May 23, 2012 [the date plaintiffs commenced this action] must be dismissed as time-barred." (Defs.' Mem. in Supp. at 9.) Defendants, however do not address any specific claims involving employees who experienced a breach or resulting harm more than four months prior to May 23, 2012.[6] As a result, the Court denies defendants' motion to dismiss any claims on the basis that they are time-barred.

### CONCLUSION

For the reasons set forth above, the city defendants' motion is granted in part and denied in part. The PBA defendants' motion to dismiss is denied. In accordance with the above, to the extent plaintiffs wish to re-plead claims that have been dismissed, they are directed to file an amended complaint within 30 days of this Order.


*SO ORDERED.*

Dated: Central Islip, New York
       June 23, 2014

_____/s/_____
Denis R. Hurley
Unites States District Judge

---

[6] To the extent defendants in their reply brief address specific claims that they argue should be time barred, the Court will not address those claims as they were raised for the first time in the reply and plaintiffs have not had an opportunity to respond.