UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
………………………………………………..…………x
JAMES CANNER, KARL HAYES, JAMES
MCCORMACK, JOSE MIGUEZ, JOHN RADIN, and
BENJAMIN TAYNE

      Plaintiffs,    **MEMORANDUM AND ORDER**
                12-cv-2611 (DRH)(GRB)

  -against-

THE CITY OF LONG BEACH, MICHAEL TANGNEY,
FRAN ADELSON, LEN TORRES, MICHAEL FAGEN,
SCOTT J. MANDEL, JACK SCHNIRMAN, STEVEN
KOHUT, DEMOCRATIC CLUB OF LONG BEACH,
INC., LONG BEACH DEMOCRATIC COMMITTEE,
PATROLMEN'S BENEVOLENT ASSOCIATION OF
THE CITY OF LONG BEACH, INC., a/k/a LONG
BEACH POLICE BENEVOLENT ASSOCIATION,
INC. a/k/a CITY OF LONG BEACH PATROLMEN'S
BENEVOLENT ASSOCIATION INC., and STEFAN
CHERNASKI,

      Defendants.
………………………………………………….…x

**APPEARANCES:**

**Rothstein Law PLLC**
Attorneys for the plaintiffs
11 Park Place
Suite 1801
New York, NY 10007
By: Eric Edward Rothstein, Esq.

**Forchelli, Curto, Deegan, Schwartz, Mineo & Terrana, LLP**
Attorneys for the defendants City of Long Beach,
Michael Tangney, Fran Adelson, Len Torres, Michael Fagan,
Scott J. Mandel, Jack Schnirman
333 Earle Ovington Blvd.
Suite 1010
Uniondale, New York 11553
By: Jeffrey G. Stark, Esq.
   Donald Jay Schwartz, Esq.
   Danielle B. Gatto, Esq.

1

**Winget, Spadafora & Schwartzberg, LLP**
Attorneys for the defendants Patrolmen Benevolent Association
of the City of Long Beach, Inc. and Stefan Chernaski
45 Broadway
19th Floor
New York, New York 10006
By:  Dianna D. McCarthy, Esq.
  Robyn Leigh Silvermintz, Esq.

**Davidoff Hutcher & Citron, LLP**
Attorneys for defendants Steven Kohut, Democratic Club of Long Beach,
and Long Beach Democratic Committee
200 Garden City Plaza
Suite 315
Garden City, NY 11530
By:  Mark E. Spund, Esq.
  Michael A. Adler, Esq.
  Jonathan Temchin, Esq.

**HURLEY, Senior District Judge:**

Plaintiffs James Canner, Karl Hayes, James McCormack, Jose Miguez, John Radin, and Benjamin Tayne, (collectively "plaintiffs") commenced this action pursuant to 42 U.S.C. § 1983 alleging that defendants violated their rights under the First and Fourteenth Amendments of the United States Constitution by retaliating against them based on their political affiliation. On June 23, 2014, the Court issued an Order (the "June Order") granting in part and denying in part a motion to dismiss by the City of Long Beach, City of Long Beach Police Department, Michael Tangney, Fran Adelson, Len Torres, Michael Fagen, Scott J. Mandel, John C. McLaughlin, and Jack Schnirman (collectively "city defendants"[1]). Additionally, it denied Patrolmen Benevolent Association ("PBA") and Stefan Chernaski's (collectively "PBA defendants") motion to dismiss a breach of the duty of fair representation claim against them, though it ultimately granted that motion in its February 11, 2015 Order on PBA defendants' motion for reconsideration. In the

---
[1] Long Beach Police Department and John C. McLaughlin are no longer parties to this action.

June Order it also granted plaintiffs leave to replead the claims that had been dismissed. Accordingly, on July 23, 2014, plaintiffs filed an Amended Complaint.

Presently before the Court are three separate motions to dismiss the Amended Complaint by the city defendants, PBA defendants, and newly added defendants the Democratic Club of Long Beach, Inc., Long Beach Democratic Committee, and Steven Kohut (collectively the "Democratic Club defendants"). For the reasons set forth below, the city defendants' motion is granted in part and denied in part, the PBA defendants' motion is granted in part and denied in part, and the Democratic Club defendants' motion is granted.

## BACKGROUND

The Court assumes familiarity with the facts as laid out in its June Order.

## DISCUSSION

### I. Legal Standard

Rule 8(a) provides that a pleading shall contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). In recent years, the Supreme Court has clarified the pleading standard applicable in evaluating a motion to dismiss under Rule 12(b)(6).

First, in *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007), the Court disavowed the well-known statement in *Conley v. Gibson*, 355 U.S. 41, 45–46 (1957) that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Twombly*, 550 U.S. at 561. Instead, to survive a motion to dismiss under *Twombly*, a plaintiff must allege "only enough facts to state a claim to relief that is plausible on its face." *Id.* at 570.

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his

entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact).

*Id.* at 555 (citations and internal quotation marks omitted).

More recently, in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), the Supreme Court provided further guidance, setting a two-pronged approach for courts considering a motion to dismiss. First, a court should "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id*. at 679. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* Thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678 (*citing Twombly*, 550 U.S. at 555).

Second, "[w]hen there are well-pleaded factual allegations a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id*. at 679. "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*. The Court defined plausibility as follows:

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.' "

*Id.* at 678 (quoting and citing Twombly, 550 U.S. at 556–57) (internal citations omitted).

In other words, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting FED. R. CIV. P. 8(a)(2)).

## II. Plaintiffs' Section 1983 Claims Against the City Council Defendants and Schnirman

As noted in the Court's June Order, "[i]t is well settled in this Circuit that 'personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.' " *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995) (quoting *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994). Moreover, "a defendant in a § 1983 action may not be held liable for damages for constitutional violations merely because he held a high position of authority." *Black v. Coughlin*, 76 F.3d 72, 74 (2d Cir. 1996). In the June Order, the Court found that plaintiffs did not adequately plead § 1983 claims against Fran Adelson, Len Torres, Michael Fagen, and Scott J. Mandel (hereinafter the "City Council defendants") and City Manager Jack Schnirman because the Complaint lacked factual allegations that these defendants were personally involved in the alleged constitutional deprivations. Presently, city defendants argue that "[p]laintiffs' reinstated first, second and third causes of action arising under 42 U.S.C. § 1983 still fail because while the Amended Complaint now contains 700 paragraphs, the City Council Defendants' and Schnirman's alleged involvement in the demotions and promotions set forth in the Amended Complaint remains nothing more than conclusory." (City Defs.' Mem. in Supp. at 9.)

Plaintiffs, however, argue that their new allegations regarding three emails sent to City Council defendants and Schnirman are sufficient to demonstrate these defendants' personal involvement. Regarding the first email, according to the Amended Complaint, on December 19, 2011, Kohut, a leader of the Democratic Club, sent an email entitled "FYI Police Department" to Adelson, Fagen, Mandel, Torres, Schnirman, and other non-parties affiliated with the Long Beach Democratic Party. (Am. Compl. ¶ 77.) According to the Amended Complaint, the email states:

5

> Word is that the current administration is promoting 2 Sergeants to Lieutenant later today. Howie Domitz and Michael Langlois. Effectively preventing Stefen [Chernaski] from becoming a Lieutenant. Same scenario use on Piazza on the Fire Department. Here however, the current administration will now be able to appoint 2 new Sergeants. The first thing we do when we get in is demote, re-assign, and punish these guys. Tirnabout is fair play, right? Just more friends and family! 14 more days…

(*Id.*) Adelson sent the second email at issue on January 2, 2012 to Mandel, Fagen, Schnirman, and Torres, after receiving Radin's application to be the LBPD's new Police Commissioner. It states: "Didn't realize these resumes came in for the Police Commissioner on the lbnycm e-mail. This guy has nerve. Police Commissioner. That's funny. He's going to be doing traffic guard at the school. He has to pay for what he did for Tommy." (*Id.* ¶ 79.) Tommy refers to Tommy Sofield, the Republican President of the City Council at the time of the November 2011 elections, who was openly supported by the plaintiffs. (*Id.* ¶ 80.) On January 2, 2012, Adelson sent the third email at issue here to Mandel, Fagen, Schnirman, and Torres after receiving McCormack's application for the Police Commissioner position. This email stated, "[i]s he a moron? We should be firing him not hiring him." (*Id.* ¶ 81.)

City defendants dispute the accuracy of these emails as quoted in the Amended Complaint. They submit copies of what they purport are the original emails obtained from Schnirman and Adelson. These emails exclude most if not all of the inflammatory language quoted in the Amended Complaint. Specifically, defendants' version of the first email excludes the language, "The first thing we do when we get in is demote, re-assign, and punish these guys. Tirnabout is fair play, right?" Defendants' copy of the second email contains only the statement, "Didn't realize these resumes came in for Police Commissioner on the lbnycm e-mail," and excludes the rest of the language referring to Radin doing traffic duty and paying for "what he did for Tommy." Finally, defendants' version of the third email does not contain any text in the

6

body of the email at all. Plaintiffs respond to the city defendants' versions of the emails in question by providing the declaration of Maria Radin, plaintiff Radin's wife, in which she explains that she received copies of the emails containing the language quoted in the Amended Complaint from plaintiff Fagen, who found the emails in his storage locker. Ms. Radin's declaration attaches versions of the emails that accurately reflect the language quoted in the Amended Complaint.

The grave discrepancies between defendants' and plaintiffs' versions of the emails is disturbing. However, the Court is not at liberty to determine which party's version is accurate, and it must apply the legal standard discussed above on this motion to dismiss. Therefore, the emails will be viewed in the light most favorable to the plaintiffs and as they are quoted in the Amended Complaint. Still, even when viewed in this light, the allegations are insufficient to maintain a claim against the City Council defendants and Schnirman. While the emails demonstrate negative feelings towards Radin and McCormack, plaintiffs still fail to allege that the City Council defendants and Schnirman were at all involved in the actual adverse actions about which plaintiffs complain. Moreover, the emails do not demonstrate that the City Council defendants and Schnirman had any relationship with Tangney, who, as defendants point out, is the alleged actual "perpetrator of the demotions and reassignments" but "is not alleged to have either received or sent any of these e-mails." (City Defs.' Reply at 2.) As a result, plaintiffs have not sufficiently pleaded that Schnirman and the City Council defendants were personally involved in the alleged constitutional violations and their § 1983 claims against those defendants for monetary relief are dismissed.

Moreover, plaintiffs' claims for declaratory and injunctive relief against these defendants are also dismissed. Although plaintiffs claim that "personal involvement of a defendant is *not*

required" when seeking injunctive and declarative relief, all of the cases they cite in support stand for the proposition that "personal involvement of an official sued in his *official* capacity is not necessary where the plaintiff is seeking only injunctive or declaratory relief under 42 U.S.C. § 1983." *N.Y. Youth Club v. Town of Smithtown*, 867 F. Supp. 2d 328, 339 (E.D.N.Y. 2012) (emphasis added). As such, those cases are not instructive here given that plaintiffs are suing the City Council defendants and Schnirman in their individual capacities. (Am. Compl. ¶¶ 19-22, 26.)

However, city defendants' argument that the remaining First Amendment claims against Tangney and the City of Long Beach should be dismissed because plaintiffs held policymaking positions that were exempt from First Amendment protection is unavailing. "Although public employees generally may not be discharged for exercising their First Amendment rights, the Supreme Court has created an exception to this rule for policy-making and confidential employees, for whom political viewpoints are permissible employment criteria and who, accordingly, may be discharged by reason of political affiliations, political beliefs, ideological viewpoints or partisan activity." *Hommel v. City of Long Beach*, 2014 WL 1010654, at *2 (E.D.N.Y. Mar. 14, 2014) (internal quotation marks and citations omitted). "In *Vezzetti v. Pellegrini*, 22 F.3d 483, 486 (2d Cir. 1994), the Second Circuit noted eight specific factors that can indicate whether a public employee may be subject to partisan-based termination: namely, whether the employee (1) is exempt from civil service protection, (2) has some technical competence or expertise, (3) controls others, (4) is authorized to speak in the name of policymakers, (5) is perceived as a policymaker by the public, (6) influences government programs, (7) has contact with elected officials, and (8) is responsive to partisan politics and political leaders." *Id*. at *3.

8

The city defendants urge the Court to look outside the Amended Complaint at a description of a commanding officer as contained in the LBPD's Rules and Regulations stating that commanding officers are responsible for, among other things, enforcement of the laws. However, even if the Court were to do so, that description alone does not demonstrate that plaintiffs are policymakers or that any of the above mentioned factors weigh in favor of the same. As a result, at this stage of the litigation, the claims against Tangney and the City are not dismissed on this ground.

Finally, the claims against Tangney are not dismissed pursuant to qualified immunity. "Government actors have qualified immunity to § 1983 claims 'insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.' " *Bolmer v. Oliveira,* 594 F.3d 134, 141 (2d Cir. 2010) (quoting *Okin v. Vill. of Cornwall–on–Hudson Police Dep't,* 577 F.3d 415, 432 (2d Cir. 2009)). Thus, "[a] qualified immunity defense is established if (a) the defendant's action did not violate clearly established law, or (b) it was objectively reasonable for the defendant to believe that his action did not violate such law." *Salim v. Proulx,* 93 F.3d 86, 89 (2d Cir. 1996). Defendants argue that since "[t]here is no clearly established law in this Circuit that Commanding Officer positions are not policy-making positions and cannot be filled based upon political affiliation . . . it would have been reasonable for the Individual City Defendants to have filled these positions based upon political affiliation." (City Defs.' Mem. in Supp. at 25.)

"Though a qualified immunity defense may be advanced on a 12(b)(6) motion, it faces a 'formidable hurdle' when advanced at such an early stage in the proceedings." *Cathedral Church of the Intercessor v. Inc. Vill. of Malverne,* 353 F. Supp. 2d 375, 391 (E.D.N.Y. 2005) (citing *McKenna v. Wright,* 386 F.3d 432, 434 (2d Cir. 2004.) Moreover, "plaintiff is entitled to all

reasonable inferences from the facts alleged, not only those that support his claim, but also those that defeat the immunity defense." *McKenna,* 386 F.3d at 436. Viewing all of the alleged facts in the light most favorable to the plaintiffs, the Court cannot say at this stage of the litigation that Tangney's actions did not violate clearly established law or that it was reasonable for Tangney to believe that his actions were not in violation of the law. As a result, this claim survives.

### III.     *Plaintiffs' Seventh Cause of Action Pursuant to Monell*

In the June Order, the Court dismissed plaintiffs' *Monell* claim because it had not sufficiently plead that the City of Long Beach undertook the alleged conduct pursuant to "a policy statement, ordinance, regulation, or decision officially adopted and promulgated by [its] officers" or a "governmental 'custom' even though such a custom has not received formal approval through . . . official decision making channels." *Monell v. Dep't of Soc. Servs.,* 436 U.S. 658, 690-91 (1978). Specifically, plaintiffs had not alleged that their injuries arose from the City's widespread practice of First Amendment violations, the actions of final policymakers, or the failure of official policymakers to properly train subordinates.

Presently, city defendants argue that the Amended Complaint similarly fails to allege "sufficient allegations to support Plaintiffs' conclusory allegation that Tangney had final policymaking authority for the City so as to bind the City." (City Defs.' Mem. in Supp. at 12.) As noted in the June Order, "[w]hether the official in question possessed final policymaking authority is a legal question, which is to be answered on the basis of state law." *Jeffes v. Barnes*, 208 F.3d 49, 57 (2d Cir. 2000) (internal citations omitted). In the June Order, since plaintiffs did not reference any state law supporting their claim that Tangney was a final policymaker, the Court dismissed the *Monell* claim. *See Anthony v. City of New York*, 339 F.3d 129, 139 (2d Cir. 2003) (rejecting plaintiff's argument that police sergeant was a final policymaker because

10

plaintiff did "not provide any analogue to the state-law authority that a county sheriff possesses, and instead argues only that [sergeant] is a final decision-maker because he had discretion to determine how to handle [a] particular situation").

In order to cure this deficiency, plaintiffs have now referenced the Long Beach City Charter in the Amended Complaint. Section 44 of that charter states that the "mayor [(also referred to as the city manager)] shall be the commissioner of police of the City of Long Beach" and "shall have charge of the police department." (Am. Compl. ¶ 52.) Section 47(a) goes on to state that the mayor "shall assume and exercise supervision over the police department and make all proper rules for the government and discipline thereof." (*Id*. ¶ 53.) Finally, Section 48 states that the "mayor may, with the approval of the council . . . appoint a commissioner of police who shall have all powers and assume all the responsibilities of the mayor while acting as commissioner of police as provided in this act." (*Id*. ¶ 54.) According to plaintiffs, therefore, "once the City Manager (defendant Schnirman) appointed Tangney as Police Commissioner, Tangney 'assumed' all of Schnirman's 'powers' and 'responsibilities' regarding the Police Department." (Pls.' Mem. in Opp'n at 13.) They argue that therefore Tangney was a final policymaker because the Charter gave him "the authority and responsibility to '…assume and exercise supervision over the police department and make all proper rules for the government and discipline thereof.' " (Pls.' Mem. in Opp'n at 13-14.) In opposition, city defendants point to paragraph 31 of the Amended Complaint stating that the City Council defendants and Schnirman "approved the promotions and demotions set forth in" the Amended Complaint. According to defendants, since Schnirman and the City Council defendants had this approval power, Tangney's decisions were not final and he was not a final policymaker. Moreover, defendants argue that nothing in the charter indicates that Schnirman "abdicated his final policymaking

11

position as 'the chief executive officer of the city.' " (City Defs.' Reply at 5 (quoting Amended Compl. ¶ 51).)

Only "[a]ctions by an individual with final decision-making authority in a municipality constitute official policy for purposes of a § 1983 claim." *Anthony*, 339 F.3d at 139 (citing *Pembaur v. City of Cincinnati*, 475 U.S. 469 (1986)). Moreover, "[a]n official has final authority if his decisions, at the time they are made, for practical or legal reasons constitute the municipality's final decisions." *Id.* (citing *Rookard v. Health & Hosps. Corp.*, 710 F.2d 41, 45 (2d Cir. 1983)). "The determination of whether an employee is a policy-maker is a question of law, although it involves a fact-intensive inquiry." *Almonte v. City of Long Beach*, 2009 WL 962256, at *5 (E.D.N.Y. Mar. 31, 2009). The Court concludes that at this stage in the litigation, the language from the Long Beach Town Charter, which implies that Schnirman had the capability to delegate his authority to "exercise supervision over the police department and make all proper rules for the government and discipline thereof" to Tangney, whom he appointed as the Police Commissioner, is sufficient to set forth a claim that Tangney was a final policymaker. Moreover, defendants' cited case law in opposition, taken primarily from the Eighth Circuit and discussing the issue at the summary judgment stage, does not compel dismissal. *See Kempkes v. Downey*, 2008 WL 852765, at *9 (S.D.N.Y. 2008) (denying motion to dismiss where it was not resolvable as a matter of law that actions taken by police commissioner did not constitute final municipal policy). Therefore, the Court will not dismiss the *Monell* claim against the City of Long Beach. Since the *Monell* claim survives on this ground, the Court need not consider whether plaintiffs sufficiently alleged its other purported bases for this claim, namely that the alleged constitutional violations were the product of an official policy or custom of the City or the City's failure to properly train or supervise subordinates.

## IV. *Plaintiffs' Cause of Action Pursuant to 42 U.S.C. §§ 1985 and 1986*

42 U.S.C. § 1985(3) prohibits two or more persons from conspiring to deprive a person of "the equal protection of the laws, or of equal privileges and immunities under the laws." To succeed on a cause of action under § 1985(3), a plaintiff must allege: "(1) a conspiracy (2) for the purpose of depriving a person or class of persons of the equal protection of the laws, or the equal privileges and immunities under the laws; (3) an overt act in furtherance of the conspiracy; and (4) an injury to the plaintiff's person or property, or a deprivation of a right or privilege of a citizen of the United States." *Thomas v. Roach,* 165 F.3d 137, 146 (2d Cir. 1999). Further, "there must be some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action." *Griffin v. Breckenridge,* 403 U.S. 88, 102 (1971); *see Thomas*, 165 F.3d at 146.

The Court dismissed plaintiffs' original 42 U.S.C. § 1985 claim against the city defendants because the complaint failed to provide any "factual basis supporting a meeting of the minds," *Arar v. Ashcroft,* 585 F.3d 559, 569 (2d Cir. 2009) (internal quotation marks and citations omitted), but gave plaintiffs leave to replead to add additional facts establishing such a meeting. In addition to the city defendants, plaintiffs now name new defendants in this claim – Chernaski, the PBA, Steven Kohut, the Democratic Club, and the Democratic Committee. They also argue that the new allegations concerning the three emails discussed above "demonstrate a meeting of the minds between . . . Schnirman, and the defendant City Councilmembers." (Pls.' Mem. in Opp'n at 20.) The Court disagrees. The two emails from Adelson and one email from Kohut are insufficient to demonstrate a meeting of the minds between the City Council defendants and Schnirman. Each email demonstrates the view point of a single person, i.e.,

13

Kohut in the first email and Adelson in the second and third emails, and not a meeting of the minds among any of the defendants.

Furthermore, plaintiffs' claim that "the municipal defendants and Kohut/Democratic Commit[t]ee conspired with Chernaski, in his capacity as PBA President, to carry out their First Amendment retaliation by, in part, having Chernaski fail to honor plaintiffs' multiple requests that the PBA [file] grievances on their behalf, (Pls.' Mem. in Opp'n at 20-21), is simply conclusory. Plaintiffs still have not pointed to any allegations in the 700 paragraph Amended Complaint suggesting that there was any meeting of the minds between Chernaski and the other defendants. Their allegations that Chernaski would not have received promotions to Lieutenant Detective and Lietutenant had he not "agreed with his co-defendants to refuse to assist the plaintiffs in his capacity of PBA President" (Am. Compl. ¶¶ 571, 577) is also a purely conclusory allegation of a conspiracy against plaintiffs. As a result, plaintiffs have failed to "allege at least some of the facts of agreement or separable acts, if any, of the alleged co-conspirators in order to support the responsibility of each for the acts of all the others," *Toomer v. Cellco P'ship*, 2012 WL 2953831, at *8 (S.D.N.Y. Jul. 20, 2012) (internal quotation marks and citation omitted), and their § 1985 claims are dismissed.

Additionally, because plaintiffs' § 1985 claims fail, so do their § 1986 claims. 42 U.S.C. § 1986 provides that any "person who, having knowledge that any of the wrongs conspired to be done, and mentioned in section 1985 of this title, are about to be committed, and having power to prevent or aid in preventing the commission of the same, neglects or refuses so to do" shall be liable to the injured party. It is well-established that a violation of § 1986 is predicated on a violation of § 1985, since the former provides a remedy for the latter. *See Brown v. City of Oneonta, N.Y.,* 221 F.3d 329, 341 (2d Cir. 2000) ("[A] § 1986 claim must be predicated on a

14

valid § 1985 claim."). Because the Court has dismissed the plaintiffs' § 1985 claim against the defendants, its § 1986 claim against them must fail as well.

## VI.  *McCormack's and Canner's NYSHRL Claims*

Plaintiffs consent to dismissal of Canner's and McCormack's constructive discharge claims. (Pls.' Mem. in Opp'n at 24.) Therefore, those claims are dismissed.

Plaintiffs argue, however, that Canner's disability claim is viable. According to the Amended Complaint, "[i]n the event that the trier of the facts credits defendant, Tangney's, claim that Canner was demoted because of his light duty status, defendants, City, Tangney, Adelson, Torres, Fagen, Mandel, and Schnirman, violated Canner's rights under the New York Executive Law § 296." (Am. Compl. ¶ 670.) City defendants argue, however, that "the allegations fail to draw a causal connection between an alleged disability and the claimed discrimination. (City Defs.' Mem. in Supp. at 20.) "Naked assertions of . . . discrimination . . . without any specific [factual] allegation of a causal link between the [d]efendants' conduct and the [p]laintiff's [protected characteristic] [are] too conclusory to withstand a motion to dismiss." *Sanders-Peay v. NYC Dep't of Educ.*, 2014 WL 6473507, at *3 (E.D.N.Y. Nov. 18, 2014) (internal quotation marks and citations omitted). Here, Canner has not demonstrated any connection between his disability and the alleged adverse actions. If anything, the allegations in the Amended Complaint suggest that any alleged adverse actions against him were the result of his political affiliation. As the Amended Complaint admits, "[d]ozens of members of the LBPD have been on protracted light duty and/or line of duty injury and have never had their firearms removed by the Police Department. This is further evidence that this is political retribution and payback and an attempt to humiliate and embarrass Canner." (Am. Compl. ¶ 123.) As a result, city defendants' motion to dismiss Canner's disability claim is granted.

## VII. *Plaintiffs' Claims Pursuant to the Long Beach Charter*

Plaintiffs claim that the city defendants violated Article 2, Section 14 of the Long Beach City Charter, which "prohibits employment decisions from being made on the basis of 'political opinions or affiliations.' " (Pls.' Mem. in Opp'n at 25.) Neither Party cites any authority addressing the viability of this claim. In particular, city defendants do not provide the Court with any legal authority in support of their position that personal involvement of the defendants is required to maintain a claim pursuant to this charter. Since defendants bear the burden on their motion to dismiss of persuading the Court to dismiss plaintiffs' claims, that motion is denied.

## VII. *Plaintiffs' State Duty of Fair Representation Claim*

As noted above, the Court dismissed plaintiffs' duty of fair representation ("DFR") claim against Chernaski in its Order of February 11, 2015 on the PBA defendants' motion for reconsideration. Prior to this Order, however, the plaintiffs submitted their Amended Complaint repleading the DFR claim, and the PBA defendants subsequently moved to dismiss this claim against Chernaski. Given the February Order, that portion of PBA defendants' motion to dismiss is moot, and the DFR claim remains dismissed against Chernaski.[2]

---

[2] PBA defendants also argue that the entire Amended Complaint should be dismissed because it does not comply with Rule 8 requiring that the complaint contain "a short and plain statement of the claim." According to PBA defendants, "the 700 paragraph complaint is extremely hard to follow" as the claims against the PBA "are intertwined with the claims against the city making it impossible for Defendants to respond." "Dismissal, however, is usually reserved for those cases in which the complaint is so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised." *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988). Although here the Amended Complaint is over 700 paragraphs, the claims against defendants are not so unintelligible as to require dismissal.

Regarding PBA defendants' argument that any DFR claims stemming from allegations that occurred more than four months prior to the time of the filing of the complaint are time-barred, defendants have not convinced the Court that dismissal on this ground is warranted based on the face of the Amended Complaint. *See Harris v. City of New York*, 186 F.3d 243, 250 (2d Cir. 1999) (Dismissal pursuant to the statute of limitations "is appropriate only if a complaint clearly shows the claim is out of time.")

## *CONCLUSION*

For the reasons set forth above, the city defendants' motion to dismiss is granted in part and denied in part, the PBA defendants' motion to dismiss is granted in part and denied in part, and the Democratic Club defendants' motion to dismiss is granted.

*SO ORDERED.*

Dated: Central Islip, New York
August 18, 2015

/s/
Denis R. Hurley
Unites States District Judge